**S. Y. RHEE IMPORTERS**

v.

**UNITED STATES.**

C. D. 4391; Protest No. 70/49002–15040–70 against the decision of the regional commissioner of customs at the port of New York.

United States Customs Court.
Nov. 22, 1972.

Rode & Qualey, New York City (William E. Melahn, New York City, of counsel), for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen. (Michael M. Hunter and John V. Henry, New York City, trial attorneys), for defendant.

LANDIS, Judge.

The merchandise of this protest consists of polyvinyl inflatable articles (inflated by mouth in the manner that plastic beach balls are inflated), with humorous sayings thereon, imported from Japan at New York in July 1969.

Customs classified the articles as toys, not specially provided for, dutiable at 28 per centum ad valorem under TSUS (Tariff Schedules of the United States) item 737.90.

Plaintiff claims that the articles are not toys in the tariff sense and are properly dutiable either at 12 per centum ad valorem under TSUS item 274.05, as greeting cards or alternatively, at 10 per centum ad valorem, under TSUS item 790.39, as inflatable articles, not specially provided for.

The pertinent provisions of TSUS relative to the classification by customs and the classifications claimed by plaintiff are as follows:

SCHEDULE 2.—WOOD AND PAPER; PRINTED MATTER

PART 5.—BOOKS, PAMPHLETS, AND OTHER PRINTED AND MANUSCRIPT MATERIAL

*Part 5 headnotes:*

1. Except for decalcomanias, labels, flaps, and bands, all of which are covered by the provisions therefor in this part, regardless of the nature of the printing thereon, this part covers only printed matter consisting essentially of textual or pictorial matter produced by any printing process, and similar matter in manuscript or typewritten form. The text may be set forth in any language by means of any kind of characters. With the exceptions above indicated, this part does not cover any article in which printing is merely incidental to the primary use of the article or in which printing is employed mainly for coloration or to produce a decorative or novelty effect (see part 4 of this schedule).

\*　　\*　　\*　　\*　　\*　　\*

Greeting cards, valentines, tally cards, place cards, and all other social and gift cards, including folders, booklets, and cutouts, or in any other form, finished or not finished, and with or without envelopes:

274.00　Without greeting, title, or other wording ...................... \*　\*　\*

274.05　With greeting, title, or other wording ..................... 12% ad val.

\*　　\*　　\*　　\*　　\*　　\*

SCHEDULE 7.—SPECIFIED PRODUCTS; MISCELLANEOUS AND NONENUMERATED PRODUCTS

Part 5.—Arms and Ammunition; Fishing Tackle; Wheel Goods; Sporting Goods, Games and Toys

Subpart E.—Models; Dolls, Toys, Tricks, Party Favors

*Subpart E headnotes:*

1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, but the provisions of this subpart do not apply to:

(i) doll carriages, doll strollers, and parts thereof (see part 5C of this schedule);

(ii) wheeled goods designed to be ridden by children, and parts thereof (see part 5C of this schedule); or

(iii) games and other articles in items 734.15 and 734.20, toy balls (items 735.09–.12), and puzzles and games in item 735.20 (see part 5D of this schedule).

2. For the purposes of the tariff schedules, a "*toy*" is any article chiefly used for the amusement of children or adults.

\*　　\*　　\*　　\*　　\*

Toys, and parts of toys, not specially provided for:

737.80　Toys having a spring mechanism　\*　\*　\*

737.90　Other ..................... 28% ad val.

\*　　\*　　\*　　\*　　\*　　\*

PART 13.—PRODUCTS NOT ELSEWHERE ENUMERATED

Subpart A.—Miscellaneous Products

\*　　\*　　\*　　\*　　\*　　\*

790.39　Pneumatic mattresses and other inflatable articles not specially provided for ................. 10% ad val.

The manufacturer invoiced the three imported inflatable articles as invoice item Nos. "E–101 Hot Water Bottle"; "E–102 Bug" and "E–103 Pillow". Those names reflect the form and shape of the inanimate and animate objects they are intended to represent. Exhibits illustrative of the imported articles are in evidence (collective exhibit 1). Each of the three articles, which were imported in a deflated condition, has an attached one-piece capping nipple into which air is expelled and capped. The articles bear the inscription "Gibson inflatable greetings". The description of the articles which follows will help to a better understanding of the disputed classification as toys.

The "Hot Water Bottle" is an article of that form and shape. The overall color is bright orange. Illustratively cartooned in the design of the article are a white bottle cap and five white daisy configurations with a gray and black ovary in the center scattered around a black and white saying that says: "Don't want to put the heat on　.　.　. but HURRY and GET WELL!".　A yel-

low and black configured bow tie is attached to the neck of the article.

The "Bug" is an article representative of a ladybug. Black lines outline the back and head of the bug. The back is an overall blue color. Yellow and black dots, a head colored yellow, a snout in a black color and eyes in black and yellow color with a white eyelid illustratively depict the back of a ladybug. The underside of the article is colored green with illustratively drawn blue crawlers and undereyes. The saying on the underside recites: "Don't worry about a thing! They've found the BUG that bit you!!"

The "Pillow" is an article the shape of a round throw-type pillow. One side, blue in color, illustratively depicts a blue teary faced moon (the face is drawn in black cartoon, the tear is red) and the saying—"Squeeze Me . . . Scrunch Me . . . Pound Me . . . Punch Me". The other side, yellow in color, illustratively depicts a smiling moonface (the face is cartooned in black with a red nose) with the saying—"FEEL BETTER NOW?"[1]

The evidence establishes that after the articles are imported they are packaged for sale at retail in a specially designed envelope of a size 12 inches by 8 inches (collective illustrative exhibit 3).

The retail envelopes enclosing the articles are variously colored. A colored picture of the packaged inflatable article appears on the envelope, and the printing on the envelope which, *inter alia,* gives the name and size of the packaged article, conveys the message that "Gibson Inflatable Greetings" are an "ORIGINAL . . . UNIQUE . . . NEW IDEA . . .". "A GREETING PLUS A GIFT FOR ALL AGES," which to "PERSONALIZE. . . . SIGN WITH A BALL POINT PEN OR FELT NIB PEN BEFORE MAILING." A "SEPARATE MAILING ENVELOPE [is] INCLUDED."[2] Some inflatable articles of the same class or kind as those in this case are imported pre-packaged for retail in specially designed envelopes.[3]

At the trial of this case four witnesses testified for plaintiff. Two witnesses testified for defendant.[4] I discern no

---

1. Collective exhibit 2, a physical exhibit of inflatable articles similar to those imported, with sayings, include the following named articles and sayings:

| | |
|---|---|
| Angel | —Have a Heavenly Christmas |
| Leprechaun | —SAINTS PRESERVE US! HAPPY ST. PATRICK'S DAY |
| Candy Stick | —GETTIN' IN SOME LICKS— MERRY CHRISTMAS |
| Giraffe | —BEIN' SICK'S A PAIN IN THE NECK! GET WELL SOON! |
| Heart | —YOU'RE ALL HEART |
| Child Astronaut | —Hope Everything's "GO" for a HAPPY BIRTHDAY |
| Elephant | —All of Me is wishing you A HAPPY BIRTHDAY |

2. The mailing envelope is a 10 x 8 inch plain white envelope, smaller than the retail envelope. The article is apparently removed from the retail envelope; the retail envelope is discarded and the article is placed in the plain white envelope for mailing.

3. Collective exhibit 4.

4. Defendant also introduced in evidence the following exhibits: exhibit A, an inflatable article of a "child astronaut", the same as the child astronaut in plaintiff's collective exhibit 2; exhibit B, a cartoon figurine of an astronaut alongside a guided missile holding a suitcase with the letters "BYE", mounted on a base with the saying "Goodbye And Good Luck"; exhibit C, a photograph of a display of similar figure-like objects.

substantial dispute as to the facts upon which both sides rely to support their arguments as to the law of the case.

This controversy points up how presumably familiar tariff classifications become embroiled in questions of law in the classification of particular articles. Cards bearing a greeting in text or illustration expressing sentiments keyed to a holiday such as Christmas, or to occasions such as weddings and birth anniversaries, and well wishes, as it is well known, are generally referred to as greeting cards.[5] One would be equally hard pressed to find a father or mother who did not know that the market in plastic inflatable articles includes inflatable articles that are toys,[6] and inflatable articles that are not, in the strict sense, toys.[7]

The entire thrust of plaintiff's vigorous argument in this case is that having proved that the imported inflatable articles are chiefly used in the manner that greeting cards are used [8] they cannot be toys, which, in the tariff sense, are articles chiefly used for the amusement of children or adults. It is plaintiff's position that for that reason the imported inflatable articles must be classified either as greeting cards or inflatable articles, not specially provided for.

It is my conclusion, however, that in the tariff meaning of the terms "greeting cards", "inflatable articles", and "toys", plaintiff has failed to overcome the presumption of correctness attaching to the customs classification as "toys" under TSUS item 737.90, and I therefore overrule the protest.

The premise of plaintiff's arguments is that the tariff classification "greeting cards" is a classification by use, to wit, chief use.[9] Use, to be sure,

is a relevant consideration in the determination of whether particular articles are, in the tariff sense, "toys" or "greeting cards". The tariff definition manifestly makes use not only relevant but imperative to the classification of toys. Conversely, while use is a relevant consideration in the classification of "greeting cards", as I shall next discuss, it does not follow that the term "greeting cards" is intended to be a classification by use.

Schedule 2, part 5, where "greeting cards" are classified in TSUS, explicitly states in its headnote 1 that except as indicated (the exceptions are unimportant to the considerations in this case) the part "covers *only printed matter consisting essentially of textual or pictorial matter produced by any printing process*, and similar matter in manuscript or typewritten form" (emphasis added). "Greeting cards" must, therefore, first and foremost consist *essentially* of textual or pictorial printed matter produced by any printing process or similar matter in manuscript or typewritten form. Use of an article that has printed matter becomes relevant by reason of the caveat in headnote 1 stating that schedule 2, part 5 (where "greeting cards" are classified), "does not cover any article in which *printing is merely incidental to the primary use of the article* or *in which printing is employed mainly for coloration* or to produce a *decorative or novelty effect*" (emphasis added).[10]

Perhaps for the reason that there is no evidence that these imported inflatables consist *essentially* of textual or pictorial printed matter produced by a printing process or similar matter in manuscript or typewritten form no one has briefed that question. The determi-

---

5. Summaries of Trade and Tariff Information (U. S. Tariff Commission), Schedule 2, Volume 5, p. 63 (1970).

6. Id. Schedule 7, Vol. 4, p. 189 (1968).

7. Id. Schedule 7, Vol. 7, p. 147 (1968).

8. The evidence preponderantly establishes that the imported inflatable articles are sold and purchased in the same manner that ordinary greeting cards are sold and purchased.

9. TSUS General Headnotes and Rules of Interpretation, 10(e)(i).

10. I judicially notice the current fad for printed sayings on items of clothing.

native issue posed by the record and discussed in the briefs is whether the chief use of the inflatable articles at the time of importation was the "amusement" of children or adults. United States v. Topps Chewing Gum, Inc., 58 CCPA 157, 159, C.A.D. 1022 (1971). Upon that issue the "gag" sayings on the inflatable articles are relevant to the determination of whether the inflated articles are *essentially* textual or pictorial printed matter or similar matter in manuscript or typewritten form, or "toys" chiefly used for the amusement of children or adults.

As the court of appeals was careful to point out in the *Topps* case, *supra*,[11] the courts are precluded from entertaining any questions of relative specificity with regard to any provisions outside schedule 7, part 5, subpart E in which the "toys" item appears. This is so because of headnote 1 in subpart E which provides:

> The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, * * *.

If it were not for the "gag" or humorous saying on these inflatable articles, it is unlikely that the protest could claim that the articles are "greeting cards". It is common knowledge that "gag" sayings, intended to amuse, may be printed as a kind of greeting. "Greetings" and "amusement" are not, therefore, mutually exclusive. Indeed, a witness testified that some "gag" sayings on inflatable articles were adopted from "gag" sayings that were printed on paper (R. 49). However the tariff term "greeting cards" in TSUS item 274.05 is not intended to be a classification of a greeting, but as schedule 2, part 5, headnote 1 explicitly states, is a classification of printed matter consisting *essentially* of textual or pictorial matter produced by any printing process (and similar matter in manuscript or typewritten form) that, *inter alia*, contains a greeting. There is, as I stated earlier, no evidence that these inflatable articles consist *essentially* of textual or pictorial printed matter produced by a printing process or similar matter in manuscript or typewritten form. Parenthetically, in the absence of any evidence, I seriously doubt that any article made to be inflated, could factually be said to consist *essentially* of textual or pictorial printed matter produced by a printing process or similar matter in manuscript or typewritten form and nothing more.

On this record, the samples (collective illustrative exhibit 1) are the best evidence of what the imported articles are. They are primarily inflatable articles because they are intended to be inflated. In view of the customs classification, presumptively the chief purpose of the inflatable articles is to amuse a child or adult. That purpose is not refuted by the evidence adduced on trial. The drawings on the articles indicating what the articles are intended to represent and the "gag" or humorous saying on the articles, furthermore, support the presumption that these inflatables are articles chiefly used for the amusement of children or adults. It is relatively of little probative value that the articles are sold at counters that feature "greeting cards" consisting essentially of printed matter, and not by retail stores that sell toys exclusively. There are few stores that any longer have a corner on the toy market. "Greetings" and "amusements" are not mutually exclusive, and the fact that the inflatables

11. The articles in *Topps* variously labeled as "Wise Guy Buttons", "Smarty Buttons" and "Ugly Buttons" were round metal disks about 2 inches in diameter, with a metal pin attached to the back chiefly used for "wearing". Humorous sayings and/or designs were printed in color on the disks. The court of appeals reversed the holding of the Customs Court that the objects such as a one-eyed monster with the words "HERE'S LOOKING AT YOU" were not toys within the meaning of TSUS as classified by customs but buttons of metal under TSUS as claimed.

have a "gag" or humorous "greeting" of sorts is not inconsistent with their classification as articles chiefly used for the amusement of children or adults. Cf. B. Shackman & Co. et al. v. United States, 31 Cust.Ct. 352, Abstract 57708 (1953).[12]

Since the inflatable articles are presumptively "toys" not specially provided for, they are classifiable as "toys" irrespective of the relative specificity of TSUS item 790.39 for inflatable articles, not specially provided for, alternatively claimed by plaintiff. United States v. Topps Chewing Gum, *supra*.

The claims under TSUS items 274.05 and 790.39 are overruled.[13] Judgment will be entered accordingly.

12. In *Shackman* the articles in the shape of a heart approximately 5 inches by 4½ inches, covered with red paper and a metal edging, bore the legend "To My Valentine." On each side of the article was a small metal handle. Under one of the handles was a noise maker. Between the two halves of the article were small paper billows which emitted a musical note when extended and compressed by holding the handles. This court held that the fact that the article was a valentine, and valentines with greetings were specifically provided for in the tariff act did not overcome the presumption that the article was a toy chiefly used for the amusement of children as classified by customs.

13. Plaintiff's motion that the testimony of defendant's witness, Dr. Winick, should be stricken from the record because the testimony is not based on observations or studies connected with the imported inflatable articles is denied in view of Dr. Winick's testimony with respect to his observations and studies concerning toys and inflatable articles at pages 107–112 of the record.